AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>U.S. Funds from Two Subject Accounts: TD Bank,<br>N.A. Account #441-1435278 & TD Bank N.A.<br>Account #441-1537529 | )<br>)<br>)<br>)<br>)   Case No. 2:23-mc-00021-SKV |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Western_____ District of _____Washington_____ is subject to forfeiture to the United States of America under _____18_____ U.S.C. § 981(a)(1)(C)*  *(describe the property)*:

Up to $433,500 in U.S. Funds from TD Bank, N.A. Account #441-1435278, held in the name of Global Supply P and P, Inc., and up to $25,000 in U.S. Funds from TD Bank, N.A. Account #441-1537529, held in the name of Surf and Turf2 You Corp. These funds are subject to criminal and civil forfeiture pursuant to 18 U.S.C. §§981(a)(1)(A)&(C), 982(a)(1)& (b)(1), 984, and 28 U.S.C. §2461(c), as proceeds traceable to violations of 18 U.S.C. §§2314 (interstate transportation of stolen property) & 371(conspiracy) and property involved in violations of 18 U.S.C. §§1956 &1957(money laundering)

The application is based on these facts:
See the Affidavit from Homeland Security Investigations Special Agent David Spitzer, continued on Attachment A and incorporated by reference.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

David Spitzer, HSI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ___03/10/2023___

_____
*Judge's signature*

City and state: Seattle, Washington

Hon. S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

USAO: 2023R00150

## AFFIDAVIT OF SPECIAL AGENT DAVID J. SPITZER

STATE OF WASHINGTON                    )

                                       )

COUNTY OF KING                         )


      I, David Spitzer, Special Agent of Homeland Security Investigations (HSI), being first duly sworn, upon oath, depose and state the following:

### AFFIANT BACKGROUND

      1.     I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since January 2020. In February 2021, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia. While at FLETC, I received nearly 1000 hours of training in such areas including, but not limited to criminal law, human smuggling/trafficking investigations, and criminal procedures. Prior to being employed with HSI, I was employed as an agent with the United States Border Patrol (USBP) for eleven years and was assigned to the Sector Intelligence Units in El Centro, CA, and Blaine, WA. In this capacity, I was responsible for conducting criminal investigations regarding the violation of immigration laws of the United States. In 2009, I graduated from the United States Border Patrol Academy at the FLETC in Artesia, New Mexico. My education includes a Bachelor of Arts degree in Political Science and a Bachelor of Arts degree in Criminology from the University of Florida.

      2.     In the scope of my duties as an HSI special agent, within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, I am authorized to request the issuance of a federal seizure warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a seizure warrant, it does not set forth each and every fact that I or others have learned during the course of the investigation.  I have set forth only those facts that I believe are necessary to establish probable cause that DAVID SUBIL, the defendant, committed Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §§ 2 and 2314, and Conspiracy to Commit Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 371, and money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, and that proceeds of the Interstate Transportation of Stolen Property offenses and property involved in the money laundering offenses were transferred into, or through, the accounts for which I am requesting a forfeiture seizure warrant.

## PURPOSE OF AFFIDAVIT AND PROPERTY TO BE SEIZED

5.      I submit this Affidavit in support of an application for combined criminal and civil seizure warrants to seize the following:

a.      Up to $433,500 in U.S. Funds from TD Bank, N.A. Account #441-1435278, held in the name of Global Supply P and P, Inc. (**SUBJECT ACCOUNT 1**); and

b.      Up to $25,000 in U.S. Funds from TD Bank, N.A. Account #441-1537529, held in the name of Surf and Turf 2 You Corp. (**SUBJECT ACCOUNT 2**).

//

1    6.    TD Bank, N.A. has its headquarters in Cherry Hill, New Jersey.

2    7.    As set out below, there is probable cause to believe that DAVID SUBIL

3    committed Interstate Transportation of Stolen Property and Conspiracy to Commit

4    Interstate Transportation of Stolen Property, offenses that constitute "specified unlawful

5    activity" pursuant to 18 U.S.C. §§ 1956(c)(7)(D) and 1961(1)(D), and deposited proceeds

6    of the offenses into one or more financial accounts, including the **SUBJECT**

7    **ACCOUNTS** listed in paragraph 5, above.

8    8.    I submit that there is probable cause to believe that the funds to be seized

9    constitute, or are derived from, proceeds traceable to a violation of Interstate

10   Transportation of Stolen Property, in violation of 18 U.S.C. §§ 2 and 2314, and

11   Conspiracy to Commit Interstate Transportation of Stolen Property, in violation of

12   18 U.S.C. § 371, and that the funds to be seized are therefore subject to civil and criminal

13   forfeiture pursuant to 18 U.S.C. § 984 and 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C.

14   § 2461(c).

15   9.    I further submit that there is probable cause to believe that DAVID SUBIL

16   committed money laundering and that the **SUBJECT ACCOUNTS** contain funds

17   involved in money laundering, in violation of 18 U.S.C. §§ 1956 (concealment) and 1957

18   (spending).  There is also probable cause to believe that the funds to be seized are

19   property involved in Money Laundering, in violation of 18 U.S.C. §§1956 and 1957, and

20   are therefore also subject to civil and criminal forfeiture pursuant to 18 U.S.C.

21   § 981(a)(1)(A) and (C), 18 U.S.C. § 982(a)(1), 18 U.S.C. § 984, and 28 U.S.C. § 2461(c).

22   10.    Due to restrictions arising from the COVID-19 pandemic, I request

23   permission to present this application, affidavit, and request for seizure warrant remotely.

24   **LEGAL AND FACTUAL PREDICATE OF INTERSTATE**

25   **TRANSPORTATION OF STOLEN PROPERTY AND MONEY LAUNDERING**

26   11.    An individual commits Interstate Transportation of Stolen Property when

27   he "transports, transmits, or transfers in interstate or foreign commerce any goods, wares,

AFFIDAVIT OF S.A. DAVID J. SPITZER - 3
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   merchandise securities or money, of the value of $5,000 or more, knowing the same to

2   have been stolen, converted or taken by fraud . . ." 18 U.S.C. § 2314.

3         12.    An individual commits money laundering in violation of 18 U.S.C.

4   § 1956(a)(1) when he knowingly conducts, or attempts to conduct, a financial transaction

5   with proceeds from specified unlawful activity, with intent to promote the specified

6   unlawful activity or evade taxes, or knowing the transaction is designed in whole or in

7   part to conceal or disguise the nature, location, source, ownership, or control of the

8   proceeds or to avoid transaction reporting requirements.  18 U.S.C. § 1956.

9         13.    An individual commits money laundering in violation of 18 U.S.C. § 1957

10   when he engages, or attempts to engage, in a monetary transaction with proceeds of a

11   specified unlawful activity in an amount greater than $10,000 by, through, or to a

12   financial institution. 18 U.S.C. § 1957.

13                  **FORFEITURE AND SEIZURE AUTHORITY**

14         14.    Violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen

15   Property) and 18 U.S.C. § 371 (Conspiracy to Commit Interstate Transportation of Stolen

16   Property) are offenses that constitute "specified unlawful activity" under 18 U.S.C.

17   § 1956(c)(7) and 18 U.S.C. § 1961(1)(B).  Title 18, United States Code, Section

18   981(a)(1)(C) subjects to civil forfeiture "[a]ny property, real or personal, which

19   constitutes or is derived from proceeds traceable to a violation of . . . any offense

20   constituting 'specified unlawful activity' . . . or a conspiracy to commit such offense."

21         15.    In addition, 18 U.S.C. § 984 applies in any civil forfeiture action

22   commenced not more than one year from the date of the underlying offense and in which

23   the subject property constitutes, among other things, funds deposited in an account in a

24   financial institution.  Under Section 984(a)(2), "[a]ny identical property found in the

25   same place or account as the property involved in the offense that is the basis for the

26   forfeiture shall be subject to forfeiture under this section."  Thus, a court may order the

27   civil forfeiture of monies found in a financial account into which deposits of criminal

AFFIDAVIT OF S.A. DAVID J. SPITZER - 4

USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  proceeds subject to forfeiture have been made, up to the amount of the forfeitable

2  deposits that have been made into the account within the prior one-year period, without

3  the need for tracing the funds to be forfeited to any specific forfeitable deposits.

4      16.    Property subject to civil forfeiture under these authorities may be seized

5  under 18 U.S.C. § 981(b), as incorporated by 18 U.S.C. § 982(b)(1).  Section 981(b)(2)

6  authorizes such seizures based upon "a warrant obtained in the same manner as provided

7  for a search warrant under the Federal Rules of Criminal Procedure."  Section 981(b)(3)

8  further permits the issuance of a civil seizure warrant "by a judicial officer in any district

9  in which a forfeiture action against the property may be filed" and provides that such

10  warrant "may be executed in any district in which the property is found." As described

11  below, there is a basis for filing a civil forfeiture action in this district as up to $433,500

12  of the funds held in **SUBJECT ACCOUNT 1** and up to $25,000 of the funds held in

13  **SUBJECT ACCOUNT 2** (collectively, the **SUBJECT ACCOUNTS**) constitute or are

14  derived from proceeds of Interstate Transportation of Stolen Property offenses that

15  occurred partly in this district.

16      17.    Property subject to civil forfeiture under 18 U.S.C. § 981(a) (including the

17  proceeds of Interstate Transportation of Stolen Property and Conspiracy to commit that

18  offense) is also subject to criminal forfeiture via 28 U.S.C. § 2461(c), which provides

19  that:

20    [i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil . . . forfeiture of property is authorized, the Government may

21  include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.  If the defendant is convicted of the offense

22  giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case.

23  

24      18.    Property subject to criminal forfeiture under 28 U.S.C. § 2461(c) may be

25  seized pursuant to 21 U.S.C. § 853(f).  Section 853(f) provides that a court may issue a

26  criminal seizure warrant when it "determines that there is probable cause to believe that

27  the property to be seized would, in the event of a conviction, be subject to forfeiture and

AFFIDAVIT OF S.A. DAVID J. SPITZER - 5
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  that [a protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the

2  availability of the property for forfeiture." Here, because the funds held in the

3  **SUBJECT ACCOUNTS** may be easily withdrawn, transferred, or otherwise made

4  unavailable for forfeiture, a protective order may not be sufficient to ensure they remain

5  available for forfeiture. For that reason, the United States seeks a criminal seizure

6  warrant, in combination with a civil seizure warrant.

7       19.     As described below, there is probable cause to believe that up to $433,500

8  in funds held in **SUBJECT ACCOUNT 1** and up to $25,000 in funds held in **SUBJECT**

9  **ACCOUNT 2**:

10            a.     Is property constituting, or derived from, proceeds of DAVID

11  SUBIL's Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2314,

12  and Conspiracy to Commit Interstate Transportation of Stolen Property, in violation of

13  18 U.S.C. § 371, and therefore:

14                 (1)     Is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C)

15  and 984, and to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C.

16  § 2461(c); and

17                 (2)     Is subject to seizure via civil and criminal seizure warrants

18  under 18 U.S.C. § 981(b), as incorporated by 18 U.S.C. § 982(b)(1), and 21 U.S.C.

19  § 853(f), by way of 18 U.S.C. § 982(b)(1), respectively.

20            b.     Is property involved in DAVID SUBIL's money laundering, in

21  violation of 18 U.S.C. §§ 1956 and 1957, and therefore:

22                 (1)     Is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A),

23  (C), and 984, and to criminal forfeiture under 18 U.S.C. § 982(a)(1), and 18 U.S.C.

24  §§ 981(a)(1)(A) and (C), by way of 28 U.S.C. § 2461(c); and

25                 (2)     Is subject to seizure via civil and criminal seizure warrants

26  under 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), by way of 28 U.S.C. § 2461(c),

27  respectively.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 6
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    20.    In this case, I respectfully request seizure warrants be ordered in this

2  district, which I intend to execute by service on TD Bank, at 1701 Route 70 East Cherry

3  Hill, New Jersey, 08003 or a local branch of TD Bank.  This Court is empowered to issue

4  a civil seizure warrant for any property subject to civil forfeiture pursuant to 18 U.S.C.

5  § 981(b), and a criminal seizure warrant for any property subject to criminal forfeiture

6  pursuant to 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C.

7  § 2461(c).  This Court has subject matter jurisdiction over a forfeiture matter under

8  28 U.S.C. § 1355(a).  It has venue to issue the requested seizure warrants under 28 U.S.C.

9  §§ 1355(b) because many of the acts giving rise to the forfeiture occurred in the Western

10  District of Washington.  Accordingly, this Court has both jurisdiction and venue to issue

11  the requested seizure warrants.

12                     **SUMMARY OF PROBABLE CAUSE**

13        **A.    INITIAL INFORMATION**

14    21.    On January 24, 2023, Homeland Security Investigations (HSI) Blaine

15  received information from the Stanwood Police Department regarding a fraud case being

16  committed in Stanwood, Washington. It was reported that an individual representing

17  himself to be an agent of Safeway, had stolen hundreds of thousands of dollars' worth of

18  Russian King Crab and Opilio Crab.

19    22.    North Star Cold Storage (North Star) is in Stanwood, Washington, within

20  the Western District of Washington. North Star processes, ships, and stores frozen

21  products for other businesses throughout the United States. The Vice President of North

22  Star, Linda Boggs, informed Snohomish County Sheriff's Deputy Klassen that one of her

23  customers, Alexander Gorelik who owns Arctic Seafoods based in San Francisco,

24  California, was the victim of fraud.

25    23.    Gorelik authorized the release of two shipments of Russian King crab from

26  the North Star facility on January 18, 2023, and January 20, 2023, to someone claiming

27  to represent Safeway.

24.     Based on the review of all relevant evidence I believe Christopher Delgado, Jennifer Zavala, and Bridget Wood to be alias' of David SUBIL. Similarly, I believe all of the emails that were sent from these aliases were operated by SUBIL. As discussed later in this affidavit, SUBIL was audio recorded multiple times throughout the course of this investigation. The contents of the calls, along with the totality of the available evidence, leads me to conclude SUBIL created the three aliases along with their corresponding emails and contact information.

25.     Deputy Klassen contacted Gorelik and learned he had been contacted by multiple individuals purporting to represent Safeway. These individuals contacted Gorelik by email from the following addresses: chrisdelgado@safewaycorporate.com, jenniferzavala@safewaycorporate.com and bridgetwood@safewaycorporate.com. Gorelik had received documents to open an account with what he thought was Albertson's (Safeway's parent company) and received a vendor number. On January 3, 2023, Gorelik received an email from jenniferzavala@safewaycorporate.com with the subject line, "Vendor #".  The e-mail from the "Invoice and Billing Supervisor" went on to read, "989425 Please reference this on all orders."

26.     Gorelik later received a purchase order via email for $432,000.00 worth of Russian King crab. Gorelik received a second purchase order via email for King crab from the same "Safeway" buyer for $296,388.00. Both purchase orders were sent from Christopher Delgado (aka SUBIL) at the email, notifications@safeway2.odoo.com.  I looked at the Odoo website. Odoo provides business management software tools, including billing and accounting. At the bottom of the purchase order emails, generated through Odoo, is the email, chrisdelgado@safewaycorporate.com, the website, www.safewaycorporate.com, and the telephone number, 800-674-3635. After receiving the purchase orders and believing they were legitimately from Safeway, Gorelik authorized the release of the product from North Star in Stanwood for both purchases.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 8
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     After the second order, Gorelik realized he had over charged and attempted to contact the buyer by phone but was unable to reach him. Gorelik attempted to call every phone number provided by Delgado and his associates, including a phone number Gorelik described as Delgado's (aka SUBIL's) cellular phone number, (208) 509-9598. Gorelik stated he tried the toll-free numbers in the email signatures of chrisdelgado@safewaycorporate.com (888-712-1983 Ext 730), bridgetwood@safewaycorporate.com (800-674-3635 Ext 732), and jenniferzavala@safewaycorporate.com (800-674-3635 Ext 710) to no avail.

28.     Gorelik called the Director of Seafood from Albertson's, the parent company of Safeway, Anthony Snow, and discovered the people he had been communicating with did not work at Safeway or Albertson's. Gorelik was informed by Anthony Snow the purchase orders were fake, and that Arctic Seafood was not set up as a vendor for Safeway or Albertson's.

**B.     SAFEWAYCORPORATE.COM AND ASSOCIATED CONTACT INFORMATION**

29.     The domain safewaycorporate.com, is not an actual Safeway e-mail or web server. Based on an open-source search, the domain "safewaycoporate.com" was registered to "Tucows Domains, Inc." on December 27, 2022[1], the day before the first communication with Arctic Seafoods and its owner, Alex Gorelik. A subpoena was sent to Tucows Domain Inc. requesting subscriber information. A return came back listing Randy Nunez as the subscriber, with an associated address of 2453 SW 17th Street in Miami, Florida. HSI Agents have investigated the name and address provided. It does not

---

[1] Based on a search of Whois.com. According to their website, a Whois domain lookup allows you to trace the ownership and tenure of a domain name. Similar to how all houses are registered with a governing authority, all domain name registries maintain a record of information about every domain name purchased through them, along with who owns it, and the date till which it has been purchased.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    appear a Randy Nunez has ever lived at the address location provided. Based on this

2    information, I believe Randy Nunez is another alias of SUBIL.

3        30.    The hosting server of Tucows Domains, Inc is SiteGround.[2]  On March 2,

4    2023, SiteGround responded to a preservation letter stating they had preserved information

5    related to the fake Safeway email accounts and the associated Domain name.

6        31.    The "Safewaycorporate.com" domain in each of the fake Safeway emails is

7    set to automatically redirect to the actual Albertson's homepage. The real safeway.com

8    domain, associated with one of the largest food and drug retailers in the United States, has

9    been registered since 1995 and is administered by "Network Solutions LLC," and is

10   Albertsons.com.

11       32.    The 800-674-3635 and 888-712-1983 phone numbers listed in the e-mails

12   from Delgado (aka SUBIL) and his associates do not appear to be real and are not listed

13   on Safeway's website. A web search for those phone numbers produced no results

14   associated with Safeway. Safeway's website lists their corporate phone number as 877-

15   723-3929.

16       33.    The e-mail addresses are also in the incorrect format for Safeway or

17   Albertson's. Deputy Klassen and I have communicated with several actual employees

18   from both companies and their e-mails are formatted

19   "firstname.lastname@company.com," unlike the emails sent from Delgado (aka SUBIL)

20   and his associates.

21       34.    The Director of Seafood from Albertson's informed Gorelik the purchase

22   orders were not valid or created with the software that Safeway or Albertson's uses.

23       35.    On March 1, 2023, I spoke with Bob James, the Corporate Asset Protection

24   Manager for Albertsons Companies. They confirmed the domain name was not real, none

25   of the individuals in the fake emails had ever worked for the company, the emails and

26   

27   [2] https://securitytrails.com/list/apex_domain/safewaycorporate.com (last visited February 12, 2023)

AFFIDAVIT OF S.A. DAVID J. SPITZER - 10

USAO #2023R00150

1  purchase orders sent from the email accounts were not from their company, and the

2  phone numbers were not associated with their company.

3  **C.      FAKE PURCHASE ORDERS CREATED BY ODOO**

4      36.    On February 10, 2023, Deputy Klassen spoke to Odoo's Vice President of

5  Sales and Customer Account Management, Brett Hydeman about the account used by

6  Delgado (aka SUBIL) to send the purchase orders to Arctic Seafoods.  Mr. Hydeman

7  stated a "free trial" account was created on December 29, 2022, which is the day after

8  communication began between "Safeway Corporate" and Arctic Seafoods. The last time

9  Delgado (aka SUBIL) logged into his account was February 1, 2023, which corresponds

10 to the date that the last purchase order was sent to Arctic Seafoods.  The email address

11 used to create the Odoo account was chrisdelgado@safewaycorporate.com and the name

12 provided was Christopher Delgado (aka SUBIL). Odoo was able to provide the last

13 internet protocol (IP) address used.  An open-source search of this IP address reveals that

14 it originates in Council Bluffs, Iowa and belongs to Google LLC.  Mr. Hydeman was

15 unsure if that IP address was related to their servers, or the IP address used by Delgado

16 (aka SUBIL).  Based on my training and experience, it is my belief that due to the

17 sophistication of this scheme, it is likely that Delgado (aka SUBIL) would use a virtual

18 private network (VPN)[3] to disguise his location and identity.

19 **D.      FIRST AND SECOND PICK-UP FROM NORTH STAR COLD**
20 **STORAGE**

21     37.    On January 23, 2023, North Star Cold Storage provided Deputy Klassen

22 with bills of lading from the transactions involving Arctic Seafoods for January 18, 2023,

23 and January 20, 2023.  The bill of lading from January 18, 2023, listed 300 cases of 6/9

24 count red king crab and 300 cases of 4/7 count king crab. The second bill of lading was

---

25 [3] According to Forbes, VPN software protects your information by masking your device's IP
26 address. The software encrypts your data and routes it through secure networks to servers in
   faraway states or other countries. A VPN hides your online identity, allowing you to browse the
27 internet anonymously. (https://www.forbes.com/advisor/business/software/why-use-a-vpn/)

1  dated January 20, 2023, and listed 360 cases of king crab legs and claws, 40 cases of

2  Opilio snow crab and 240 cases of 6/9 count red king crab legs and claws.

3      38.     North Star Cold Storage also provided Deputy Klassen with the trucker

4  sign-in log from both days. The log from January 18, 2023, listed the driver's name as

5  "Juan Sanchez" and the trucking company as "Jorge Trucking." According to the log, the

6  truck arrived at about 7:08 a.m. and left at about 8:42 a.m. The log from January 20,

7  2023, also listed Juan Sanchez from Jorge Trucking. The truck arrived at about 7:00 a.m.

8  and left at approximately 9:00 a.m.

9      39.     On January 23, 2023, Deputy Klassen reviewed footage from the North

10 Star Cold Storage facility from January 18, 2023, and January 20, 2023.[4]  Video from

11 January 18, 2023, showed a white truck with two axles and a refrigeration unit mounted

12 above the cab arriving to pick up the merchandise. According to Deputy Klassen's review

13 of the footage, the truck appeared to be at least 26 feet long, had a "Ryder" logo on the

14 side, and a reflective stripe running the entire length of the box.

15     40.     The videos showed several white cases, labeled on the top "Perishable

16 Keep Frozen" securely sealed. These white cases were moved from the North Star Cold

17 Storage facility into the truck on January 18, 2023, and January 20, 2023.

18
19
20
21
22
23
24
25



26

---

27 [4] Based on Deputy Klassen's review of the surveillance footage and speaking with employees at
the storage facility, it is apparent that the time stamp from the video is not accurate.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 12

USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.     When I spoke to the Albertsons Companies Corporate Asset Protection Manager on March 1, 2023, he confirmed that Safeway never uses Ryder trucks when conducting pick-ups.

42.     On February 8, 2023, I sent a subpoena to Ryder for information regarding rental information for the trucks used on January 18, 2023, and January 20, 2023, to transport the stolen goods.  On February 22, 2023, I received the Ryder rental truck agreement and global positioning records. The truck was rented by Global Supply Systems, Inc. with the listed contact as David SUBIL. The Ryder truck, rented by SUBIL picked up the stolen shipments from North Star on January 18th and 20th of 2023. SUBIL provided Ryder with the same contact number, (786) 403-3168, used to sell the stolen shipments in Florida.  Ryder records also provided the driver information, which lists Juan Manuel SANCHEZ-Abreu with an associated Florida driver's license. This is the same driver that was identified picking the third shipment on January 25, 2023, as discussed in the paragraphs below.

### E.     THIRD PICK-UP FROM NORTH STAR COLD STORAGE

43.     On January 23, 2023, Gorelik advised Deputy Klassen that Delgado had contacted him from the same cell phone number, (208) 509-8598, and was attempting to purchase a third truckload of crab.  Gorelik advised he knew it was that number based on the number showing up on the screen when Delgado (aka SUBIL) called. On January 24, 2023, Gorelik sent Deputy Klassen the third purchase order for 6,250 pounds of 4/7 legs and claws and 6,250 pounds of 6/9 king crab, totaling $450,000.00. This purchase order was sent to Gorelik from Delgado (aka SUBIL) at notifications@safeway2.odoo.com, but listed the chrisdelgado@safewaycorporate.com email account, as well as the www.safewaycorporate.com web domain at the bottom of the email.  According to Gorelik, the purchase order had the incorrect weight, and another purchase order was sent to Gorelik approximately five minutes later with the correct weight (totaling 12,000 pounds instead of 12,500 due to the size of the pallets) and a total purchase order amount

of $432,000.00. This purchase order was sent from and contained the same information as the incorrect purchase order described above. Gorelik worked with North Star Cold Storage to put product of lesser value in boxes labeled as the product ordered. Gorelik then advised Delgado (aka SUBIL) the product was released. Soon thereafter, North Star Cold Storage received a phone call from Delgado (aka SUBIL) to schedule the pickup, which was scheduled for 8:00 a.m. on January 25, 2023.  Deputy Klassen arranged for the use of unmarked vehicles to follow the truck from the North Star Cold Storage on January 25, 2023, after the product was loaded into the truck.

44.    On the morning of January 25, 2023, Deputy Klassen and members of the Violent Offender Task Force, operating in unmarked vehicles, set up around the North Star Cold Storage warehouse.  Deputy Klassen contacted an employee at the facility, identified as A.L., and he advised Deputy Klassen he would handle the transaction like any other by bringing the driver the sign-in sheet and then loading the truck.

45.    At approximately 7:00 a.m., Deputy Klassen observed a white tractor trailer bearing Florida license plate number JD29UD and registered to Juan Manuel SANCHEZ-Abreu, parked in the loading dock of North Star Cold Storage.  At approximately 7:40 a.m., Deputy Klassen observed a male wearing a black hooded jacket exit the white tractor trailer and walk back to open the doors on the back of the trailer.  Deputy Klassen observed the unknown subject and noted he was close in stature and appeared to look like the driver he had previously seen in surveillance footage from the pickup on January 20, 2023.

46.    A.L. texted Deputy Klassen an image of the trucker sign-in log.  Deputy Klassen observed that the driver's name and signature box were filled out with scribbles. The signature scribble bore a close resemblance to the signature from the prior two events. The trucking company name was listed as "Jorge Trucking." The cell phone number was clearly written as "360-798-4436." A.L. also texted Deputy Klassen a photo of the license plate as the tractor trailer departed the facility. The trailer plate was a

Florida plate, "QA84KI," however the "4" was black while the other letters was blue. The "4" appeared to be a house number affixed to the plate. Deputy Klassen noted the Department of Transportation (DOT) number, "3684599," and company name, "DBH Transport LLC," on the side of the truck.



47.     Deputy Klassen and the unmarked units followed the tractor trailer as it traveled southbound on Pioneer Highway, eastbound on State Route 532, then southbound on Interstate 5. It exited on State Route 530 and initially turned into a gas station on the west side of Interstate 5, before crossing over Interstate 5 and going to the Pilot truck stop, located at 2430 State Route 532 in Arlington, WA, on the east side of Interstate 5. A passenger entered the cab, and the vehicle was refueled. Around 9:00 a.m., the truck exited the fuel stop and resumed driving southbound on Interstate 5.  Deputy Klassen noted the "4" on the license plate had fallen off, and the license plate now read QA81KI.

//

AFFIDAVIT OF S.A. DAVID J. SPITZER - 15
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    48.    Deputy Klassen contacted Trooper Eberle with Washington State Patrol's
2  (WSP) Commercial Vehicle Enforcement Division. Trooper Eberle advised Deputy
3  Klassen that he looked up the truck's DOT number and it was not valid. Trooper Eberle
4  advised that the State Patrol could open the weigh station south of the City of Everett,
5  Washington, and perform a commercial vehicle inspection. The tractor trailer entered the
6  weigh station and Trooper Eberle and Trooper Lemmon performed an inspection.

7    49.    The driver was identified by Florida Driver's License as A.C.C. and the
8  passenger was identified by Florida Driver's License as Juan Manuel SANCHEZ-Abreu.

9    50.    WSP Troopers were advised by the occupants they were going to Portland,
10  Oregon, to deliver the load to Albertson's. Trooper Eberle texted Deputy Klassen an
11  image of the bill of lading given to him by SANCHEZ.  It should be noted the bill of
12  lading that SANCHEZ presented looked nothing like the two previous bills of lading that
13  Deputy Klassen reviewed from North Star Cold Storage. The date on the top of the bill of
14  lading SANCHEZ presented was January 18, 2023[5], the trucking company was listed as
15  Jorge Trucking, and the destination was listed as "Albertson's/Safeway at 17505 NE San
16  Rafael, Warehouse 97230." The shipper was listed as Arctic Seafood with the street filled
17  in as North Star Cold Storage in Stanwood, WA. The items loaded in the trailer were
18  described as 12 units of frozen crab, weighing 1250. Handwritten diagonally across the
19  document is "Call Chris" with phone number, (208) 509-8598 written directly
20  underneath, which is the same number that Delgado (aka SUBIL) provided to both North
21  Star Cold Storage and Arctic Seafoods. The seal number "0609777" was handwritten in
22  different handwriting near the bottom of the document.

23
24
25
26

[5] The date of this trip was January 25, 2023.  See image of fraudulent bill of lading presented to
27  Trooper Eberle below this paragraph.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

51.     Deputy KLASSEN requested the current bill of lading from North Star Cold Storage, which had just been provided to the driver of the truck earlier in the morning. When Deputy Klassen received the image of the document, he noted it matched the other two bills of lading in format. The authentic bill of lading listed 12,000 pounds of product, almost ten times as much listed on the bill of lading presented to WSP Troopers.

//

//

//

//

//

//

AFFIDAVIT OF S.A. DAVID J. SPITZER - 17
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

52.     Based on this information, I believe the bill of lading SANCHEZ presented to WSP Troopers was forged and that SANCHEZ knowingly presented the forged document as they had been given the legitimate bill of lading before leaving North Star Cold Storage. Based on the photo of J.S.A on his Florida driver's license, Deputy Klassen informed me that SANCHEZ closely resembles the driver who also picked up the product from North Star Cold Storage on January 20, 2023.

53.     The tractor trailer left the weigh station at approximately 10:45 a.m. and continued southbound on Interstate 5.  A short time later, Deputy Klassen and other law enforcement officers initiated a vehicle stop of the tractor trailer near Tacoma,

AFFIDAVIT OF S.A. DAVID J. SPITZER - 18
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Washington.

2       54.    Deputy Klassen approached the driver's side and contacted SANCHEZ

3   Deputy Klassen instructed SANCHEZ to turn the vehicle off and step out, which he did.

4   Deputy Klassen frisked him for weapons and attempted to read SANCHEZ his Miranda

5   Warnings verbatim from the department issued card, but SANCHEZ stated he didn't

6   speak English and needed a translator. Due to the traffic, it was difficult to hear so

7   Deputy Klassen placed SANCHEZ in the back of a patrol vehicle.  Deputy Klassen called

8   the language line and, through an interpreter, read SANCHEZ's Miranda Warnings

9   verbatim from his department issued card. SANCHEZ stated he understood his rights and

10  that he did not wish to speak with Deputy Klassen. SANCHEZ was placed back into the

11  rear of the patrol vehicle.

12      55.    Deputy Klassen then spoke with the passenger, A.C., in another patrol

13  vehicle. Deputy Klassen was sitting in the driver's seat, A.C. was sitting in the passenger

14  seat, and a deputy with a bodycam was recording from the backseat. Deputy Klassen

15  called the language line for A.C., as well, and, through an interpreter read the Miranda

16  Warnings verbatim from his department issued card.  A.C. stated he understood his rights

17  and he was willing to speak with investigators without a lawyer present.

18      56.    A.C. stated he and SANCHEZ both live in Florida, that he was out of

19  money, and badly needed work. A.C. said he had worked for SANCHEZ before, and that

20  SANCHEZ set up the transaction. A.C. said he used SANCHEZ's name at the cold

21  storage facility because J.S.A was the owner of the trucking company. A.C. stated he and

22  SANCHEZ had come from Florida on Friday to do this job, but he wasn't sure about the

23  date.  A.C stated he was delivering the product to Portland and didn't know anything

24  about the paperwork SANCHEZ had given the trooper. A.C. showed Deputy Klassen a

25  WhatsApp thread that included SANCHEZ's name at the top. A.C. scrolled through it,

26  showing Deputy Klassen the length of their communication.  Deputy Klassen didn't see

27  any recent communication and didn't see if they had any communications regarding their

AFFIDAVIT OF S.A. DAVID J. SPITZER - 19
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

arrangement for this delivery, A.C. stated there was not.

57.    A.C. and SANCHEZ consented to a search of the van. Deputy Klassen removed the seal from the back of the trailer, reading "0609777" as listed on the fraudulent bill of lading but was not the same as the one, "0008788," listed on the legitimate bill of lading.

58.    Deputy Klassen entered the back of the trailer and observed the pallets North Star Cold Storage loaded.  Deputy Klassen was unable to move the pallets due to weight and could only inspect the closest two. They bore pallet "license plates" identical to two of the boards photographed and sent to Deputy Klassen by A.L., bearing the lot number 42435-N and boards 4 and 6. The product label showed Arctic Seafood King Crab, packed by North Star.

59.    Deputy Klassen entered the cab of the vehicle, located, and seized multiple cell phones, a tablet, and GPS device, believing all could provide valuable evidence of this crime and that seizing them could preserve evidence while applying for a search warrant.  Deputy Klassen searched for both the real and fake bills of lading but could not find either. There were numerous other bills of lading and trucking documents in manila envelopes, but these documents were not associated to the documents related to this date, so Deputy Klassen did not seize them.

60.    Deputy Klassen compared his in-person contact with SANCHEZ, on this date, with the subject observed in the security footage from the theft that occurred on January 20, 2023.  Based on his comparison of the two individuals, Deputy Klassen believes that it was SANCHEZ on both occasions based upon observed physical characteristics – to include height, weight approximate age, dark-skin complexion, and a distinct bulbous nose.  Additionally, the individual on the surveillance footage wore a hooded dark-colored jacket with a tan-colored pocket on the chest, right shoulder, and stomach area.  During the in-person encounter with SANCHEZ, Deputy Klassen observed that SANCHEZ was wearing a dark-colored jacket with the hood pulled up and

AFFIDAVIT OF S.A. DAVID J. SPITZER - 20
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  tan-colored pockets in the same locations as on the jacket as previously observed on the

2  surveillance footage.

3       61.    Based on his investigation, Deputy Klassen developed probable cause that

4  SANCHEZ committed the crime of forgery and knowingly possessed a fraudulent bill of

5  lading, which he used to avoid detection while transporting a load of fraudulently

6  obtained product.

7       62.    Deputy Klassen advised SANCHEZ he was under arrest and placed him in

8  handcuffs.  SANCHEZ informed Deputy Klassen that he was willing to release the truck

9  to A.C.  Deputy Klassen advised A.C. very clearly the product in the back of the trailer

10  was not actually crab and was unsellable.  SANCHEZ was transported and booked into

11  the Snohomish County Jail.  A few hours later SANCHEZ was bailed out of the

12  Snohomish County Jail, and it is unknown where SANCHEZ. traveled to after he was

13  released from police custody.

14       63.    I reviewed the phone tolls for a 786-403-3168, one of the numbers SUBIL

15  is the known subscriber of. On January 23, 2023, SUBIL, a resident of Miami, Florida,

16  made phone calls to the Snohomish County Police Department, including their evidence

17  room. SUBIL contacted two attorneys in the area. SUBIL also contacted a bail

18  bondsman, and posted $520.00 in bail to get SANCHEZ-Abreu out of custody.

19       64.    On January 30, 2023, the Stanwood Police Department received a police

20  report from the Sioux City, Iowa Police Department regarding a stolen tractor trailer

21  reported on September 6, 2022.  On that date, SANCHEZ reported that his tractor trailer

22  had been stolen from the side of Interstate 29.  This tractor trailer is the same vehicle, as

23  identified by Florida license plate, that arrived at North Star Cold Storage on January 25,

24  2023, to pick up the third shipment. In the police report, SANCHEZ claimed he had a flat

25  tire, walked to the nearest truck stop to get help, and when he returned found that his

26  truck and trailer had been stolen. SANCHEZ informed police he had the keys and had

27  locked the vehicle, so he had no idea how the thief was able to take the truck. According

to the report, SANCHEZ owned a business called Chris Trucking Road Services.  It should be noted at the time of this theft SANCHEZ was hauling a load of Arctic Seafoods crab from Chesapeake, Virginia, to Seattle, Washington.  Gorelik informed me that Arctic Seafoods was just moving product from one cold storage facility to another.

65.     The Sioux City detective that investigated this crime noted that SANCHEZ stated he had a cell phone at the time of the vehicle breakdown but decided to walk a total of 45 minutes to get help instead of summoning help by using his cellular phone. After an initial conversation, the detective attempted to reach SANCHEZ and the number that initially worked for SANCHEZ was no longer in service.  The detective also learned that the companies involved in this also were unable to reach SANCHEZ ever again. The detective also noted that route of travel did not make sense for a westbound trip from Virginia to Washington.  At the time of the theft, SANCHEZ was traveling southbound through Sioux City, Iowa.

66.     The detective concluded, through many interviews of people involved, that SANCHEZ was likely involved in the disappearance of his tractor trailer**.** At this time, throughout various locations in the Midwest, there were a significant number of vehicle thefts mostly involving tractor trailers full of meat. Due to the lack of evidence and an inability to reach SANCHEZ again, the Sioux City Police Department closed their case. Based on my discussions with other law enforcement officers involved in this case, as well as the evidence reviewed, it is my belief that SANCHEZ was probably involved in the theft of the merchandise inside his truck and likely sold the product for a considerable profit. It seems to be no coincidence that SANCHEZ and/or a coconspirator approached the same company, Arctic Seafoods, using a different name (Christopher DELGADO aka **SUBIL**), with the aforementioned scheme several months after being involved in the theft of their product.

//

AFFIDAVIT OF S.A. DAVID J. SPITZER - 22
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      **F.      FOURTH PICK-UP FROM NORTH STAR COLD STORAGE**

2          67.      On January 27, 2023, Detective Steven Martin with the Stanwood Police

3  Department informed me that Delgado (aka SUBIL) contacted Gorelik once again to

4  facilitate another transaction between the business attempting to impersonate Safeway

5  and Arctic Seafoods. Since the communication is still occurring after the last shipment, it

6  is my belief these shipments may be stored in a warehouse without being opened right

7  away.

8          68.      On January 30, 2023, Delgado (aka SUBIL) contacted Gorelik via cell

9  phone to set up the next purchase.  At the behest of law enforcement, to procure warrants,

10  Gorelik informed Delgado (aka SUBIL) there was a snag in production, and he would

11  need to push the next shipment to Thursday.  Delgado (aka SUBIL) informed Gorelik he

12  would call back on Wednesday to finalize the purchase to pick up the merchandise on

13  Thursday, February 2, 2023.  A few minutes later, Delgado (aka SUBIL) called Gorelik

14  and asked him to send the invoice for the previous shipment on January 25, 2023.  Due to

15  this ongoing investigation, law enforcement agents advised Gorelik to send the invoice to

16  Delgado (aka SUBIL). Arctic Seafoods has not received payment for any of the previous

17  three shipments.

18          69.      On February 1, 2023, Delgado (aka SUBIL) sent a purchase order to Arctic

19  Seafoods in the amount of $420,000 for a fourth shipment. As described earlier in this

20  affidavit, the purchase order emails are sent from Delgado (aka SUBIL) at

21  notifications@safeway2.odoo.com, but list the chrisdelgado@safewaycorporate.com

22  email account, as well as the www.safewaycorporate.com web domain at the bottom of

23  the email. A copy of the purchase order that is attached to the email is shown below:

24

25

26

27

AFFIDAVIT OF S.A. DAVID J. SPITZER - 23
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



70.      The information contained in the above purchase order is not associated to the legitimate Safeway company. Based on the open-source search of the associated address, it returns to the Albertson's corporate office headquarters, which is Safeway's parent company. The phone number does not come back associated with any Albertson's entity. For reference, Detective Martin received a copy of a legitimate Safeway purchase order from Scott Heggan, the Meat, Seafood, and Deli Procurement Manager from the Seattle Division of Albertsons Companies, which is shown below.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 24

USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Safeway Inc. Purchase Order. Ship to: Auburn Fresh Meat, 3520 Pacific Avenue South, Auburn, WA 98047. Purchase Order No. 143646.

71.     On February 2, 2023, at approximately 4:08 p.m. Linda Boggs from North Star informed me they had just received a call from Delgado (aka SUBIL) to schedule a pickup appointment for the following day, February 3, 2023, at 1:00pm. As shown on their caller identification, Delgado (aka SUBIL) called from the same number he had previously communicated with both Arctic Seafoods and North Star.

72.     On February 2, 2023, at 4:21 p.m., Jennifer Zavala (aka SUBIL) (jenniferzavala@safewaycorporate.com) sent an email to Arctic Seafoods advising, "We have you scheduled for payment invoice #230120-1 on February 21, 2023." Previously, on January 23, 2023, Zavala (aka SUBIL) sent an email to Arctic Seafoods stating the first invoice (invoice #230118-2) will be paid on February 17, 2023. No payment was received by Arctic Seafoods on February 17, 2023.

73.     On February 3, 2023, Delgado (aka SUBIL) called North Star, via his known phone number, (208) 509-8598, to cancel the scheduled pickup, stating there were truck problems.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 25
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

74.     On February 3, 2023, I sent a subpoena to T-Mobile for subscriber information and phone tolls related to Delgado's (aka SUBIL) number, (208) 509-8598. T-Mobile was able to send the phone tolls; however, they informed me that the service is with Tracfone Wireless.  The T-Mobile representative informed me that Tracfone uses T-Mobile towers, so they were able to provide call data, but Tracfone holds the subscriber data.  Tracfone provided the subscriber data, which showed the following subscriber: "copy_1 1478424248," with the associated address: 1478424248, Boise, ID 83706. Based on my training and experience, I believe the subscriber name provided by the user is fake as well as the associated address.

75.     On February 7, 2023, the owner of Arctic Seafoods, Alex Gorelik, was contacted by Delgado (aka SUBIL) via email from chrisdelgado@safewaycorporate.com. Delgado (aka SUBIL) stated, "Hello. I'm just checking in to see how the production looks this week. Give me a heads up if you can." Gorelik responded he would have a better idea the following month and Delgado (aka SUBIL) responded, "Oh, ok. What type of inventory do you have available at the moment?" Based on the information available during this investigation, it is my belief that Delgado (aka SUBIL) is attempting to get more merchandise from Arctic Seafoods, while continuing to misrepresent himself as a representative of Safeway/Albertsons. I further believe he intends on not paying for the merchandise.

76.     On February 7, 2023, at approximately 4:15 p.m. North Star informed me that Delgado (aka SUBIL), had called them and scheduled a pickup of the last order. The purchase order related to the shipment had been previously sent on February 1, 2023, and is found on page 19 of this affidavit. The pickup was scheduled to occur on February 8, 2023, at approximately 11:00 a.m.

G.     **STOLEN PROPERTY FROM SHIPMENT 1 AND 2 IN FLORIDA**

77.     On February 1, 2023, at 8:52 a.m., Gorelik contacted me by telephone and stated that at approximately 7:30 a.m., one of Gorelik's customers, M.G., who is based

out of Florida, informed him he had received an offer by both text message and email from Bob INTERIAN of Jomara Seafood, based out of Hialeah, Florida, to buy crab. M.G. informed Gorelik that based on the description of the seafood and the pictures that were sent to him by INTERIAN, it appeared to be Arctic Seafood's crab. M.G. noted the prices that INTERIAN offered were below market value.

78.      Gorelik immediately suspected it was the crab stolen from Arctic Seafood by Delgado (aka SUBIL) and others, who previously represented themselves as Safeway corporation. M.G. forwarded Gorelik pictures INTERIAN had sent him, including pictures of the box and a label. The label showed the lot number (Lot #: 42306-N) that was listed on both the purchase order sent from Delgado (aka SUBIL) to Arctic Seafoods and the invoice that Arctic Seafoods sent Delgado (aka SUBIL) on January 18, 2023. This lot number was included in both shipments from January 18, 2023, and January 20, 2023. Additionally, the description of the crab matched what had been stolen in both pickups. According to M.G., the product was being held at Neptune Cold Storage, located at 7337 NW 37th Avenue in Miami, Florida.

79.      On February 2, 2023, I contacted the owner of INTERIAN to inform him the products he was attempting to sell were stolen. INTERIAN stated he was unaware the products had been stolen. INTERIAN has been cooperative and sent all the invoices given to him by Global Supply P&P, the company that sold him the stolen property. He further stated he purchased the stolen property from an individual named "David".

AFFIDAVIT OF S.A. DAVID J. SPITZER - 27
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



80.    INTERIAN stated he was given a business card by "David." This card had two phone numbers, 833-231-1955 and 786-403-3168.



81.    On February 3, 2023, INTERIAN provided me with the receipt of wire transfers that Jomara Seafoods made to Global Supply P & P Inc. earlier. The wire transfers were all made to the TD Bank account listed on the invoice above, ending in -

AFFIDAVIT OF S.A. DAVID J. SPITZER - 28

USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5278. The total amount in transfers was more than $400,000. INTERIAN stated he paid $25 per pound for 6/9 and 4/7 king crab and $23 per pound for the 9/12 king crab. INTERIAN stated he planned to sell the product for approximately $30 per pound.

82.     Global Supply P & P Inc, is an active Florida Company. The company's registered agent is David SUBIL, and the registered address of the company is 6415 SW 42 Street Miami Florida, 33155. The Company was incorporated on September 15, 2020. This company has a website, https://www.globalsupplysystemsinc.com. While the number provided to contact the company on the website is 833-231-1955, INTERIAN informed me that he and David communicate using the other number on the business card, (786) 403-3168.  INTERIAN sent me a contact card to my cell phone, which lists the contact's name as David Global Food and that number as its associated phone number.  INTERIAN said that he has spoken to David via that phone number on several occasions, most recently on February 16, 2023.

83.     I have reviewed Global Supply P&P's bank accounts. They do show wire transfers from Jomara Seafood. The deposit of these criminal proceeds into and through bank accounts controlled by SUBIL is addressed in more detail in paragraphs 113-126.

84.     On February 16, 2023, a subpoena was sent to T-Mobile regarding the subscriber information for the phone number, (786) 403-3168.  T-Mobile responded that the subscriber was David SUBIL with an associated address of 6801 SW 83rd Place in Miami, FL. According to T-Mobile, SUBIL has been the subscriber of this phone number since August 9, 2021.

85.     SUBIL is the registered agent of a second company, SURF & TURF 2 YOU CORP, incorporated on May 25, 2022. The registered address is 6415 SW 42 Street Miami Florida, 33155. This company has a website, https://surfandturftoyou.com. The number provided to contact the company on its website, 833-231-1955, is the same as one of the numbers on the card given to INTERIAN by David.

AFFIDAVIT OF S.A. DAVID J. SPITZER - 29
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      86.    Based on a search of the Florida Department of Motor Vehicles, SUBIL has

2  an issued driver license (S-140-160-71-148-0) with two addresses listed.  One being the

3  registered address of Global Supply P & P Inc at 6415 SW 42nd Street in Miami, FL and

4  the other being the address listed on the invoice above for wire transfers to Global Supply

5  P & P Inc. at 6801 SW 83rd Place in Miami, FL.  The address found on the top of the

6  invoice for Global Supply P & P Inc. is 6800 Bird Road, PMB 462 in Miami, Florida.

7  An open-source check of this address reveals that it is a UPS store in Mami, Florida.

8      87.    David SUBIL has a long criminal history, including, but not limited to,

9  Grand Theft of the 2nd Degree, Grand Theft 3rd Degree and Fraud-Swindle.  An online

10  search reveals that in two prior instances, he has purchased seafood and meat with

11  counterfeit checks.

12      88.    I obtained a recent mugshot of David SUBIL. He was arrested by the South

13  Miami Police Department in October 2022 for DUI and Damage to Property or Person.



22      89.    On Tuesday, February 7, 2023, INTERIAN emailed still photographs from

23  the surveillance cameras at Jomara Seafood in Miami, Florida. According to INTERIAN,

24  the photographs depict the individual that sold him the crab and who he referred to as

25  "David." Based on the investigation, I believe the man in the photographs is David

26  SUBIL.  Based on my experience and my knowledge of this investigation, I believe that

AFFIDAVIT OF S.A. DAVID J. SPITZER - 30
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  SUBIL is representing himself as DELGADO and using both phone numbers, (208) 509-

2  8598 and (786) 403-3168.



**H.   SURVEILLANCE AND GPS TRACKING OF FOURTH SHIPMENT**

90.   On February 8, 2023, at approximately 9:30 a.m., a dispatcher from NW Freight contacted North Star Cold Storage to confirm the pickup of the shipment. At approximately 11:30 a.m., a semi-truck with a black cab, bearing Washington license plate 94919RP, and white trailer, bearing Washington license plate 18986AG, approached the loading docks of North Star Cold Storage.  I was able to see the cab had "NW Freight" on both sides of the truck's doors. A North Star employee approached the truck and was able to confirm this vehicle was, in fact, there to pick up the target shipment. The target shipment included a box with a court authorized GPS tracking device.  On February 1, 2023, U.S. Magistrate Judge Mary Alice Theiler issued a warrant authorizing the installation of a GPS tracking device in the target shipment. No. MJ23-049-1 (W.D. Wash. February 1, 2023).  After the warrant was issued, on February 1, 2023, at approximately 1:50 p.m., I installed the tracking device in one of the boxes and put the box in the middle of pallet 3.

//

AFFIDAVIT OF S.A. DAVID J. SPITZER - 31
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

91.     On February 8, 2023, at approximately 12:20 p.m., after the pallets were loaded onto the truck, it left the cold storage facility and began traveling eastbound on SR-532 toward Interstate 5. While traveling toward Interstate 5, I coordinated with WSP's Commercial Vehicle Enforcement Division to inspect the truck and its occupants. Upon entering the ramp to merge onto Interstate 5 southbound, WSP Trooper Travis Snider initiated a vehicle stop on the truck.  Trooper Snider informed me the driver of the truck was Oleksandr Avramyshyn and provided a photograph of his Oregon driver's license. Trooper Snider asked the driver if there was anyone else in the vehicle and initially Avramyshyn denied until eventually Trooper Snider found out that an additional individual was in the sleeper area of the cab, who did not have any identification except a document on his phone with a picture; however, all of the writing was in a foreign language and the subject did not speak any English.  The driver of the truck presented Trooper Snider with the bill of lading, registration, logbook, and information regarding their trip.  Avramyshyn stated they were traveling to Portland and provided an address of 901 NW Eastwind Drive. Trooper Snider took photographs of the documentation and provided them to me via text message and/or email.  At approximately 1:15 p.m., Trooper Snider released the vehicle, and it continued southbound on Interstate 5.

92.     Based on a review of the GPS tracking device, at approximately 5:00 p.m., the truck arrived at the Northwest Freight warehouse in Troutdale, Oregon, where it remained until February 9, 2023, and was then moved approximately five miles to another warehouse, located at 17600 Northeast San Rafael Street in Portland, Oregon. On Friday, February 17, 2023, the shipment moved to the area of Catalina Cold Transfer, located at 2927 NW 74th Avenue in Miami, FL.

93.     I contacted Frozen Foods Express (FFE), the company believed to have shipped all four shipments to Florida. FFE provided a contract between them and Global Supplies Incorporated. The Contract listed David SUBIL as the contact and gave the 786-403-3168 (the number he is the subscriber of) number as contact. They also provided

their email correspondence. The emails show the contact person was SUBIL. I confirmed
SUBIL did pay for the delivery. Since SUBIL has been in custody, at least two emails
were sent to FFE requesting documents. As discussed in section L of this affidavit,
SUBIL'S wife, Maria SALVATIERRA, sent these emails on SUBIL's behalf.

94.    On Saturday, February 18, 2023, the shipment moved to the area of
Florida's Best Services, located at 702 NW 6th Avenue in Fort Lauderdale, FL.  Based on
a Google search, it appears the business provides construction services, as well as junk
removal.

95.    On February 18, 2023, at approximately 3:00 p.m. pacific time, HSI
Taskforce Agent Walter Duran went to the location of the tracker.  Agent Duran noticed
multiple pallets of boxes dumped outside the business and sent me photos.  Based on this,
I believe that SUBIL disposed of the shipment once he realized it did not contain the crab
he was attempting to steal by fraud.  At approximately 5:00 p.m. pacific time, Agent
Duran was able to retrieve the tracking device I had placed. Agent Duran also stated with
70% certainty that he saw SUBIL by the discarded fourth shipment.

I.    ADDITIONAL COMMUNICATION WITH SUBIL

96.    On February 15, 2023, Delgado (aka SUBIL) contacted Gorelik and
informed him they had opened the third shipment and determined the product shipped
was not king crab. As previously discussed with law enforcement, Gorelik blamed the
cold storage facility and determined that they would investigate what happened.

97.    On February 15, 2023, and February 16, 2023, Delgado (aka SUBIL), using
the same phone number, contacted Gorelik and discussed the third shipment and how
they would handle the situation. Gorelik informed Delgado (aka SUBIL) it would be a
process and the product should not be sent back to the cold storage facility at this time,
until a full investigation can take place. These two calls were recorded.

98.    On February 16, 2023, INTERIAN informed me David had contacted him
from (786) 403-3168, the number belonging to SUBIL, and wanted to sell him additional

AFFIDAVIT OF S.A. DAVID J. SPITZER - 33
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    crab. INTERIAN told David he was no longer interested in the product. It is believed that

2    David is still trying to sell the stolen merchandise acquired via the first two shipments of

3    king crab from Arctic Seafoods.

4         99.    On February 17, 2003, Delgado (aka SUBIL), once again, contacted

5    Gorelik and informed him that he had opened the fourth shipment and realized that the

6    product in the boxes was not crab. Again, at the behest of law enforcement, Gorelik

7    explained he did not know what happened and they would investigate what happened.

8    This phone call was recorded.

9    **J.    FLIGHT BOOKED TO COLOMBIA**

10         100.    On Saturday, February 18, 2023, I was notified that SUBIL had booked a

11    one-way ticket from Miami International Airport (MIA) to Medellin, Colombia.  The

12    flight booking notification was based on an exact match of name and date of birth.  The

13    American Airlines flight (Flight # 1127) was scheduled to depart MIA at approximately

14    10:32 a.m. eastern on Sunday, February 19, 2023. According to Customs and Border

15    Protection (CBP), the flight was booked on the morning of February 18, 2023, at

16    approximately 8:48 a.m.  Based on Passenger Name Record (PNR) data, which is

17    collected at the time of booking, SUBIL would be traveling alone.  According to CBP

18    records, SUBIL has no international travel in at least the last five years.  SUBIL has no

19    known connection to Columbia. Based on my experience and the recent activity in this

20    case, I believe this travel was booked to flee the country from potential prosecution.

21    **K.    ARREST OF DAVID SUBIL IN FLORIDA**

22         101.    On February 18, 2023, the Honorable David W. Christel reviewed and

23    signed a Complaint and Arrest Warrant for David SUBIL (see MJ23-074). SUBIL was

24    subsequently arrested on February 19, 2023, at the Miami Airport with the SUBJECT

25    DEVICES on his person and over $11,000 cash. SUBIL had his initial appearance in

26    Miami, Florida on February 21, 2023.

27    //

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

102.    On March 2, 2023, SUBIL waived his detention and identity hearing. He will be transported back to the Western District of Washington. The date of his arrival is unknown at this time.

103.    Gorelik has received no further calls from DELGADO (aka SUBIL) at (208) 509-8598 since February 17, 2023.

104.    Interian has received no further calls from "David" (aka SUBIL) at 786-403-3168 since February 16, 2023.

**L.    SEARCH OF DAVID SUBIL'S RESIDENCE**

105.    On March 6, 2023, United States Magistrate Judge Lauren F. Louis in the Southern District of Florida issued a federal search warrant under Case Number 1:23-MJ-02421. The warrant was for the search and seizure of evidentiary items from 6801 Southwest 83rd Place in Miami, Florida.

106.    On March 8, 2023, the search warrant was executed by HSI Miami and HSI Blaine Agents at 6801 Southwest 83rd Place in Miami, Florida. Agents contacted SUBIL'S wife, Maria Eugenia SALVATIERRA. After being read her *Miranda Rights* in Spanish, she acknowledged she understood, waived those rights and spoke to agents through the assistance of a Spanish speaking Task Force Officer.

107.    SALVATIERRA stated she had spoken to SUBIL nearly every day since he had been in custody.  She reported he asked her to pull together materials to provide his attorney in aid of his defense. SUBIL also asked her to sign into his computer and send emails from his account to the company he uses for his transportation needs.

108.    SALVATIERRA was played an audio recording of Christopher DELGADO, the individual believed to be SUBIL. SALVATIERRA did not recognize the voice as SUBIL, but also stated it was difficult to confirm this because the recording was in English, and she does not speak the language.

109.    SALVATIERRA stated she has a separate bank account from SUBIL. She confirmed that SUBIL uses TD Bank. SALVATIERRA stated money was transferred

AFFIDAVIT OF S.A. DAVID J. SPITZER - 35
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from SUBIL'S business accounts to her business account when she asked for money. She stated the purpose of these transfers was for personal expenses, such as the house, car and credit cards among other things.

110.   SALVATIERRA confirmed that SUBIL has two businesses called Global Supply and Surf & Turf 2 You. She also stated SUBIL bought freezers for the house and puts the product he sells inside those freezers.

111.   SALVATIERRA stated SUBIL'S trip to Colombia was a planned business trip. She reported SUBIL had not been to Colombia before, and she wasn't sure what the exact purpose of the trip was. She had expected him to be gone for two to three weeks. SALVATIERRA said SUBIL had been attempting to venture out to other locations to purchase merchandise.

112.   Several items were removed from SUBIL'S residence, including multiple digital devices, financial and business documents, photos and business cards for Global.

## M.    SEIZURE OF FUNDS IN SUBJECT ACCOUNT 1

113.   The United States seeks a warrant to seize up to **$433,500** from **SUBJECT ACCOUNT 1**, all of which is proceeds from SUBIL's Interstate Transportation of Stolen Property offenses. Under the provisions of 18 U.S.C. § 984, the Court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture have been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any specific forfeitable deposits.

114.   **SUBIL** deposited a total of $433,500 of criminal proceeds into **SUBJECT 1**, within the past three months. SUBIL opened this account and is the sole signatory on the account. After these proceeds were deposited into **SUBJECT ACCOUNT 1**, SUBIL transferred $25,000 to **SUBJECT ACCOUNT 2**. SUBIL also opened **SUBJECT ACCOUNT 2** and is the sole signature on the account. SUBIL also withdrew some of these proceeds in cash, sent funds to others, and made various purchases.  SUBIL

engaged in money laundering by transferring the proceeds of his offense through **SUBJECT ACCOUNTS 1** and **2**, with the intent to conceal or disguise the nature, location, source, ownership, or control of these proceeds or to avoid transaction reporting requirements, in violation of 18 U.S.C. § 1956. Eight of these transfers, involving more than $10,000 of criminal proceeds, also constitute incidences of spending money laundering, in violation of 18 U.S.C. § 1957.

115.   TD Bank records reflect five deposits to **SUBJECT ACCOUNT 1** between January 30, 2023, and February 10, 2023. Four of these deposits were wire transfers by Jomara Seafoods, the company that purchased the stolen seafood from SUBIL. The only other deposit to **SUBJECT ACCOUNT 1** was a February 6, 2023, wire transfer of $1,400 from an unknown source.

| DATE | FROM | TYPE | AMOUNT |
|------|------|------|--------|
| 1-31-2023 | Jomara Seafoods | Wire transfer | $75,500 |
| 2-1-2023 | Jomara Seafoods | Wire transfer | $63,250 |
| 2-2-2023 | Jomara Seafoods | Wire transfer | $150,000 |
| 2-3-2023 | Jomara Seafoods | Wire transfer | $144,750 |
| | | TOTAL | $433,500 |

116.   **SUBJECT ACCOUNT 1** received a wire transfer of $75,500 from Jomara Seafoods on January 31, 2023. The balance on **SUBJECT ACCOUNT 1** prior to this wire from Jomara was $526.24. The same day, DAVID SUBIL withdrew $42,500 from **SUBJECT ACCOUNT 1** and made a wire transfer of $5,000 from **SUBJECT ACCOUNT 1** to a Truist Bank account in his name ending x9022. At least $41,973.76 of this wire transfer was proceeds of SUBIL's offense (treating the $526.24 as untainted funds). The balance in **SUBJECT ACCOUNT 1** after these debits was $28,210.49.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

117.   **SUBJECT ACCOUNT 1** received a wire transfer of $63,500 from Jomara Seafoods on February 1, 2023.  The balance on **SUBJECT ACCOUNT 1** prior to the second wire from Jomara was $28,210.49, which consisted entirely of the remaining funds from the January 31, 2023, wire from Jomara Seafoods. On February 1, 2023, SUBIL withdrew $5,000 from **SUBJECT ACCOUNT 1**, and made various other debits to the account.

118.   **SUBJECT ACCOUNT 1** received a wire transfer of $150,000 from Jomara Seafoods on February 2, 2023. The balance on **SUBJECT ACCOUNT 1** prior to the third wire from Jomara was approximately $87,346.85, which consisted entirely of the remaining funds from the first two Jomara wires. On February 2, 2023, SUBIL depleted approximately $168,468.26 from **SUBJECT ACCOUNT 1**, including a withdrawal of $109,000 and transfers to other financial accounts controlled by SUBIL and his family, including $5,000 to **SUBJECT ACCOUNT 2**.

119.   **SUBJECT ACCOUNT 1** received a wire transfer of $144,750 from Jomara Seafoods on February 3, 2023. The balance on **SUBJECT ACCOUNT 1** prior to the fourth wire from Jomara was approximately $68,878.59, which consisted entirely of the remaining funds from the first three Jomara wires. Subsequently, SUBIL has depleted approximately $179,555.90 from **SUBJECT ACCOUNT 1**, including what appear to be cash withdrawals totaling $102,000 and $25,000 in transfers to **SUBJECT ACCOUNT 2**.

120.   SUBIL's transfer of proceeds through **SUBJECT ACCOUNT 1** was designed, in whole or in part, to conceal the nature, source, location, ownership, or control of the proceeds.

121.   The table below summarizes the proceeds deposited into **SUBJECT ACCOUNT 1** and the subsequent transactions involving more than $10,000 of proceeds, in violation of 18 U.S.C. § 1957:

AFFIDAVIT OF S.A. DAVID J. SPITZER - 38
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| DATE | TRANSACTION | PROCEEDS DEPOSITED | PROCEEDS TRANSFERRED |
|------|-------------|--------------------|-----------------------|
| 1-31-2023 | Jomara Seafoods wire | $75,500 | |
| 1-31-2023 | Withdrawal | | $42,500 |
| 2-1-2023 | Jomara Seafoods wire | $63,250 | |
| 2-2-2023 | Jomara Seafoods wire | $150,000 | |
| 2-2-2023 | Withdrawal | | $109,000 |
| 2-3-2023 | Jomara Seafoods wire | $144,750 | |
| 2-3-2023 | Withdrawal | | $20,835.54 |
| 2-3-2023 | Withdrawal | | $45,000 |
| 2-3-2023 | Withdrawal | | $37,000 |
| 2-7-2023 | Wire to J.A.F. | | $15,000 |
| 2-7-2023 | TO **SUBJECT ACCOUNT 2** | | $15,000 |
| 2-9-2023 | Wire to J.A.F. | | $15,000 |
| | | **TOTAL** | **$299,335.54** |

122.    The balance on **SUBJECT ACCOUNT 1**, as of February 10, 2023, was approximately $98,818.43.

**N.    SEIZURE OF FUNDS IN SUBJECT ACCOUNT 2**

123.    The United States seeks a warrant to seize up to $25,000 from **SUBJECT ACCOUNT 2**, all of which is proceeds from SUBIL's Interstate Transportation of Stolen Property offenses. After the proceeds were deposited into **SUBJECT ACCOUNT 1**, SUBIL transferred $25,000 of those proceeds to and through **SUBJECT ACCOUNT 2**. Under the provisions of 18 U.S.C. § 984, the Court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture have been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any specific forfeitable deposits.

124.    SUBIL engaged in money laundering by transferring the proceeds of his offense through **SUBJECT ACCOUNT 1** to **SUBJECT ACCOUNT 2**, with the intent to conceal or disguise the nature, location, source, ownership, or control of these

AFFIDAVIT OF S.A. DAVID J. SPITZER - 39
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  proceeds or to avoid transaction reporting requirements, in violation of 18 U.S.C. § 1956.

2  SUBIL then transferred $15,000 to Forever Wholesaler, Inc.  He also engaged in

3  spending money laundering, in violation of 18 U.S.C. § 1957.

4       125.    TD Bank records reflect three deposits to **SUBJECT ACCOUNT 2**

5  between January 30, 2023 and February 8, 2023. All were transfers of proceeds from

6  **SUBJECT ACCOUNT 1** to **SUBJECT ACCOUNT 2**. Prior to the first transfer, the

7  balance on **SUBJECT ACCOUNT 2** was $6.01.

| DATE | DEPOSIT FROM | TYPE | AMOUNT |
|------|--------------|------|--------|
| 2-2-2023 | **SUBJECT ACCOUNT 1** | Transfer | $5,000 |
| 2-7-2023 | **SUBJECT ACCOUNT 1** | Transfer | $15,000 |
| 2-7-2023 | **SUBJECT ACCOUNT 1** | Transfer | $5,000 |
| | | TOTAL | $25,000 |

14       126.    The balance on **SUBJECT ACCOUNT 2**, as of February 8, 2023, was

15  approximately $5,146.20.

16  <u>**CONCLUSION**</u>

17       127.    Based on the foregoing, I submit that there is probable cause to believe that

18  up to $433,500 in funds held in **SUBJECT ACCOUNT 1** and up to $25,000 in funds

19  held in **SUBJECT ACCOUNT 2**:

20            a.    Is property constituting, or derived from, proceeds of DAVID

21  SUBIL's Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2314,

22  and Conspiracy to Commit Interstate Transportation of Stolen Property, in violation of

23  18 U.S.C. § 371, and therefore:

24            (1)    Is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C)

25  and 984, and to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C.

26  § 2461(c); and

27

AFFIDAVIT OF S.A. DAVID J. SPITZER - 40
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          (2)     Is subject to seizure via civil and criminal seizure warrants

2    under 18 U.S.C. § 981(b), as incorporated by 18 U.S.C. § 982(b)(1), and 21 U.S.C.

3    § 853(f), by way of 18 U.S.C. § 982(b)(1), respectively.

4          b.     Is property involved in DAVID SUBIL's money laundering, in

5    violation of 18 U.S.C. §§ 1956 and 1957, and therefore:

6          (1)     Is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A),

7    (C), and 984, and to criminal forfeiture under 18 U.S.C. § 982(a)(1), and 18 U.S.C.

8    §§ 981(a)(1)(A) and (C), by way of 28 U.S.C. § 2461(c); and

9          (2)     Is subject to seizure via civil and criminal seizure warrants

10   under 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), by way of 28 U.S.C. § 2461(c),

11   respectively.

12       128.   This warrant is being submitted via reliable electronic means. Fed. R. Crim.

13   P. 4.1 & 41(d)(3)

14

15

16

17

                  DAVID J. SPITZER, Affiant
                  Special Agent
                  Homeland Security Investigations

18

19

20       The above named agent provided a sworn statement to the truth of the foregoing

21   affidavit by telephone on the 10th day of March, 2023.

22

23

24

                  THE HON. S. KATE VAUGHAN
25                     United States Magistrate Judge

26

27

AFFIDAVIT OF S.A. DAVID J. SPITZER - 41
USAO #2023R00150

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970